IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JEFF WILCOSKY                                                                                          PLAINTIFF

VS.                                               CASE NO. 07-CV-1100

SWIFT TRANSPORTATION CORP.;
SOUTHEAST TRUCK AND TRAILER
REPAIR; MAX WOODS; ASHLEY COUNTY
SHERIFF JAMES ROBINSON, in his Individual
Capacity; MICHAEL VORHEARSE, in his
Individual Capacity;  SCOTT JOHNSON; SCOTT
MASON; JOHN DOE; and JANE DOE                                                       PLAINTIFFS

## **MEMORANDUM OPINION**

Before the Court is Defendants Scott Johnson and Scott Mason's Motion to Dismiss. (Doc. No. 13).  Plaintiff Jeff Wilcosky has responded.  (Doc. No. 28).  Defendants have replied to Plaintiff's response.  (Doc. No. 31).  The Court finds the matter ripe for consideration.

BACKGROUND

On May 25, 2006, Jeff Wilcosky, a North Caroline resident, was employed as a truck driver by Swift Transportation Corp., a corporation with it's corporate headquarters in Phoenix, Arizona.  While driving through Arkansas, Wilcosky suffered a trailer failure.  He called "on road" Swift for assistance.  Wilcosky was told that roadside assistance would be contacted to help him.  Southeast Truck and Trailer Repair was dispatched to assist Wilcosky with his trailer failure.  Max Woods, an employee of Southeast, arrived at the scene.  After Woods arrived, Wilcosky alleges that Woods assaulted him.  Thereafter, law enforcement was called, Wilcosky was arrested and held in the Ashley County Jail for two days.

On May 27, 2006, Wilcosky was released from the Ashley County Jail. After his release, Wilcosky called his employer, Swift, and spoke to someone named Devin. Devin told Wilcosky that he had been placed on a security hold, that he needed to get his stuff out of the truck and leave the truck in Arkansas. Wilcosky called Swift again and talked to someone named Bill in Ocala, Florida. Bill advised Wilcosky that he had been fired by Swift. Wilcosky called Swift a third time. This time Wilcosky asked to speak to Scott Johnson, Swift's terminal manager in Ocala, Florida. Johnson was out of the office until the following week so Wilcosky did not speak to him at that time. Wilcosky then called the company's corporate offices in Phoenix, Arizona, where he spoke with Scott Mason in the employee relations department. Thereafter, an investigation was conducted by Swift. During this investigation, Wilcosky spoke to Mason again by phone. These are the only contacts between Wilcosky and Scott Mason.

Sometime during this period, Wilcosky's mother telephoned Scott Johnson in Florida and told him that her son was in jail in Arkansas and Swift needed to get him out. Later, sometime after Wilcosky was released from jail, he called Scott Johnson again. This time Wilcosky was able to speak to Johnson. During this telephone conversation, Johnson told Wilcosky that his employment with Swift had been terminated. These were the only contacts between Wilcosky and Scott Johnson.

On October 2, 2007, Jeff Wilcosky filed suit against Swift Transportation Corp., Southeast Truck and Trailer Repair, Max Woods, Ashley County Sheriff James Robinson, Michael Vorhease, Scott Johnson, Scott Mason, John Doe and Jane Doe. In his Complaint, Wilcosky alleges a deprivation of his civil rights pursuant to 42 U.S.C. § 1983, along with state tort claims of assault, deceit, interference with business expectancy, bad faith, defamation,

malicious prosecution, abuse of process and wrongful termination.  The matter is now before the Court on Defendants Scott Johnson and Scott Mason's Motion to Dismiss.  They claim that Arkansas lacks minimum contacts with either Defendant, thus, the Court can not exercise personal jurisdiction over them.  Therefore, they argue that the claims against them should be dismissed pursuant to Fed.R.Civ.P. 12(b)(2).

## DISCUSSION

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendants may be subjected to jurisdiction in the forum state.  *Denver v. Hentzen Coating, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004).  In a diversity action such as this one, the Court may assume jurisdiction over non-resident defendants only to the extent permitted by Arkansas' long-arm statute and by the Due Process Clause of the Fourteenth Amendment.  *Denver,* 380 F.3d at 1073 (citing *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1289 (8th Cir. 1991)).  The long-arm statute of Arkansas extends jurisdiction over non-residents to the fullest extent permitted by the Due Process Clause.  Ark. Code Ann. § 16-4-101 (B) (Repl. 1999); *Epps v. Stewart Information Services, Corp.,* 327 F.3d 642, 647 (8th Cir. 2003).  Thus, the Court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process.  *Denver,* 380 F.3d at 1073.

"Due process requires minimum contacts between a non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Denver,* 380 F.3d at 1073; *World-Wide Volkswagen Corp., v. Woodson,* 444 U.S. 286, 291-92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  The minimum contacts inquiry focuses on whether the defendant purposely availed himself of the privilege of conducting activities

3

within the forum state and thereby invoked the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

There are two theories for evaluating minimum contacts: general jurisdiction and specific jurisdiction. *Denver,* 380 F.3d at 1073. Under the general jurisdiction theory, a Court may hear a lawsuit against defendants if they have "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendants' activities directed at the state. *See id*. Thus, the plaintiff must make a prima facie showing that the defendants' contacts were not "random," " fortuitous," or "attenuated." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). In contrast, specific jurisdiction is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendants purposely directed their activities at the forum state and the claims arose out of or related to those activities. *Burger King Corp. v. Redzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

To evaluate the sufficiency of a defendant's contacts, the Eighth Circuit has instructed courts to consider the following factors: 1) the nature and quality of the defendants' contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties. The first three factors are given significant weight. *Id.* at 1073-74. However, the third factor-the relation of the cause of action to the contacts-only applies in the specific jurisdiction context and is immaterial in a general jurisdiction inquiry. *See Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006).

In their motion to dismiss, the Defendants generally assert that they have essentially no

contact with the state of Arkansas.  They state that their only contacts with Arkansas are several telephone calls made to them by Wilcosky while he was physically located in the state.  This argument seems to focus on the general jurisdiction theory.  To exercise general jurisdiction over the Defendants, Wilcosky must make a prima facie showing that the Defendants had "continuous and systematic" contacts with Arkansas.  He has failed to make such a showing.  Rather, it appears that the Defendants' only relevant contacts with Arkansas were several telephone calls between Wilcosky and the Defendants which Wilcosky initiated.  These contacts were more fortuitous than continuous and systematic.  Thus, the Court has no power to exercise general jurisdiction over these Defendants.

The Court turns now to the theory of specific jurisdiction, which a court may exercise when a defendant has purposely directed his or her activities at residents of the forum and when the litigation results from alleged injuries that arise out of or relate to those activities.  *Wessels, Arnold & Henderson v. Nat'l Medical Waste, Inc.,* 56 F.3d 1427, 1432 (8th Cir. 1995)(citing *Burger King,* 471 U.S. at 472).  In this context, Wilcosky claims that he suffered harm due to the Defendants' activities directed at Arkansas.  However, the Defendants' only relevant contacts with Arkansas are Wilcosky's telephone calls to them while he was in the state. These calls were initiated by Wilcosky, not the Defendants.  There is nothing before the Court to indicate that the Defendants purposely directed any contacts toward Arkansas or any of its residents.[1]  Thus, the Defendants' contacts with Arkansas and the relationship between Wilcosky's cause of action and those contacts are insufficient to justify the exercise of personal jurisdiction over these Defendants.  *See Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100, 1102 (8th

---

[1] Wilcosky is a resident of the state of North Caroline.

Cir. 1996). Therefore, the Court has no power to exercise specific jurisdiction over the Defendants.

In an effort to establish jurisdiction, Wilcosky asserts that the Defendants committed an intentional tort (defamation) in this matter, thus, warranting the exercise of personal jurisdiction over them. When such a claim is made, a court evaluates additional factors to determine whether the alleged tortfeasor could " 'reasonably anticipate being haled into court' " in the forum state. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 894 (1984)(quoting *World-Wide Volkwagen Corp.,* 444 U.S. at 297-98); *Dakota Indust., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1391 (8th Cir. 1991). Specifically, the Court considers whether the alleged tortfeasor expressly aimed his intentional tortious conduct at the forum state and knew that the brunt of the defendant's injury would be felt in that state. *Caulder,* 465 U.S. at 789-90; *see also Steinbuch v. Culter,* 518 F.3d 580, 586 (8th Cir. 2006)(alleged tortfeasor must know plaintiff would feel brunt of injury in forum state); *Dakota Indust., Inc.,* 946 F.2d at 1390-91. In this case, the record shows that Wilcosky initiated the contact with Scott Johnson and Scott Mason by telephoning them in Florida and Arizona, respectively. It also shows that Wilcosky is a North Carolina resident who returned to his home state after the incident. There in no indication that these Defendants intentionally aimed any conduct at Arkansas or knew that Wilcosky would feel the brunt of the alleged harm in Arkansas, a state he was merely passing through. Thus, they could not have reasonably anticipated being haled into an Arkansas court based upon the telephone calls from Wilcosky. Therefore, even under *Calder's* "effects" test, the Court can not exercise personal jurisdiction over these Defendants.

CONCLUSION

For the reasons discussed herein and above, the Court finds that it lacks the power to exercise personal jurisdiction over Defendants Scott Johnson and Scott Mason in this matter. Therefore, their pending Motion to Dismiss should be and hereby is **granted**. An order of even date, consistent with this opinion shall issue.

IT IS SO ORDERED, this 24th day of June, 2008.

    /s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge